KRUG v INGHAM COUNTY SHERIFF'S OFFICE

Docket No. 250111. Submitted November 2, 2004, at Lansing. Decided November 23, 2004, at 9:30 a.m.

Thomas L. Krug brought an action in the Ingham Circuit Court against the Ingham County Sheriff's Office, seeking public records under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.* The papers sought related to an investigation of allegations of harassment of a female deputy by one or more other deputies through the Internet. The plaintiff had filed an FOIA request with the sheriff's office, and the request was denied routinely as one relating to an ongoing investigation and exempt from disclosure under MCL 15.243(1)(b)(i). As an affirmative defense, the defendant's attorney alleged the statutory exemption in spite of the fact that the investigation had been closed. The court, Thomas L. Brown, J., concluded that the defendant should have treated the lawsuit as a continuing request for information under the FOIA and should have timely released the requested records, even though, during discovery, the defendant did release a redacted version of the requested file. The redaction omitted certain contents of a memo from one officer to another discussing communications with the defendant's corporate counsel. The court also awarded costs and attorney fees to the plaintiff under MCL 15.240(6) and punitive damages under MCL 15.240(7), and ordered the full file released. The defendant appealed.

The Court of Appeals *held*:

1. The trial court erred by determining that the plaintiff's initial FOIA request was properly denied on the basis of an ongoing investigation, MCL 15.243(1)(b)(i). The defendant was not entitled to deny the request without actually determining that the entire case file was exempt from disclosure, that is, review the file and release any nonexempt information.

2. The trial court correctly determined that the defendant should have treated the lawsuit as a continuing request for information under the FOIA, and the defendant should have released the information when the ongoing investigation exemption no longer applied. Because the investigation had been closed before the affirmative defenses were filed by the defendant, the

exemption was no longer a binding constraint on release. For these reasons, the granting to the plaintiff of attorney fees and costs and punitive damages of $500 was proper because the plaintiff was forced to file the suit to obtain the release of the requested information.

3. The attorney-client privilege is narrow in scope. It applies only to confidential communications by a client to his attorney made for the purpose of obtaining advice. When the client is an organization, the privilege attaches to communications between the attorney and any employee or agent authorized to speak on behalf of the organization in relation to the subject matter of the communication. Attorney-client privilege did not apply to the memo at issue in this case, and that memo should have been released in full.

Affirmed.

*Wilson, Lawler & Lett, PLC* (by *R. David Wilson*), for the plaintiff.

*Cohl, Stoker, Toskey & McGlinchey, P.C.* (by *Ruth E. Mason*), for the defendant.

Before: COOPER, P.J., and FITZGERALD and HOEKSTRA, JJ.

PER CURIAM. Defendant, the Ingham County Sheriff's Office, appeals as of right from the trial court judgment in favor of plaintiff Thomas L. Krug in his suit seeking public records under the Freedom of Information Act (FOIA).[1] We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In November of 2000, Detective Lieutenant Timothy Howery began investigating allegations that a sheriff's deputy was being sexually harassed via an Internet site by one or more of her co-deputies. Upon the advice of an assistant attorney general (AAG) with expertise in

---

[1] MCL 15.231 *et seq.*

investigating computer crimes, Lt. Howery continued to monitor the site for further postings until he learned that the Internet provider hosting the site went out of business. Lt. Howery only identified one person using the site who he interviewed on March 8, 2001, after the site had been removed from the Internet.

Subsequently, the complaining deputy indicated her desire to discontinue the investigation. In May or June, Lt. Howery contacted Undersheriff Matthew Myers to advise him that no more information would be forthcoming in the investigation. Undersheriff Myers did not declare the investigation inactive or closed, although Lt. Howery believed it should have been closed at that time. On August 1, 2001, the AAG contacted Lt. Howery to determine if he could close his file on the complaint. Lt. Howery told the AAG that the investigation could go no further and he assumed that the AAG closed his portion of the file.

On August 23, 2001, plaintiff submitted an FOIA request to defendant to receive a copy of the case file involved in this investigation. Although plaintiff was the head of the deputies' union, he identified himself as a citizen rather than a representative of an organization on the FOIA request form. Staff Services Administrator Major Allan C. Spyke informed Undersheriff Myers that the union had filed an FOIA request. Plaintiff's request was denied on August 27, 2001, by Maj. Spyke, who stated that the investigation was still open and, therefore, disclosure would interfere with an ongoing criminal investigation pursuant to MCL 15.243(1)(b)(i).[2] Before denying the request, Maj. Spyke

---

[2] The disclosure exemption specifically provides in part:

(1) A public body may exempt from disclosure as a public record under this act any of the following:

asked Lt. Howery if the case was still open, but failed to review the file. Defendant's policy was to deny any FOIA request regarding open investigations. Even though no action was being taken with the file, Undersheriff Myers testified that the investigation would have been compromised if the information had been released.

Rather than file a second FOIA request, plaintiff filed suit on October 19, 2001, seeking the release of the information. On October 30, Undersheriff Myers sent Lt. Howery a memo indicating that he was no longer interested in pursuing the investigation, and Lt. Howery officially closed the investigation on November 8. On that same day, however, defendant's attorney prepared the answer in this case and included as an affirmative defense that the file was exempt from FOIA disclosure because it would interfere with an ongoing criminal investigation. Defendant failed to file the answer until November 13. Plaintiff finally discovered that the investigation had been closed on December 18, 2001, when he deposed Lt. Howery. In response to the subpoena, Lt. Howery brought the case file to the deposition. However, Undersheriff Myers's memo had been redacted based on attorney-client privilege.

The trial court determined that defendant properly denied plaintiff's first request, but found that defendant should have treated the lawsuit as a continuing request for information under the FOIA and timely

* * *

(b) Investigating records compiled for law enforcement purposes, but only to the extent that disclosure as a public record would do any of the following:

(i) Interfere with law enforcement proceedings. [MCL 15.243.]

released the requested records. As plaintiff was required to resort to the courts to obtain the records, the trial court awarded plaintiff costs and attorney fees pursuant to MCL 15.240(6). As defendant falsely indicated in its affirmative defenses that the release of the public record would interfere with an ongoing investigation that had actually been closed, the trial court awarded plaintiff punitive damages of $500 pursuant to MCL 15.240(7). The trial court also ordered that Undersheriff Myers's memo be released in full as the redacted information was innocuous and did not invade the privilege of any attorney-client relationship. This appeal followed.

## II. CONTINUING REQUEST

Defendant contends that the trial court erroneously found plaintiff's lawsuit to be a continuing request for information. We first note that the trial court incorrectly determined that plaintiff's initial request was properly denied. Defendant was not entitled to deny plaintiff's FOIA request without actually determining that the entire case file was exempt from disclosure. Defendant was required to review the case file and release any nonexempt information—any information whose release would not have interfered with the investigation.[3] As Maj. Spyke admitted that defendant's policy is to issue blanket denials of all FOIA requests relating to open case files and that he actually failed to review the file before issuing defendant's response, defendant's denial was clearly improper.

Subsequently, the trial court properly ordered the release of the information after determining that defen-

[3] *Evening News Ass'n v City of Troy*, 417 Mich 481, 491-494; 339 NW2d 421 (1983), citing MCL 15.243(1)(b)(i) and MCL 15.244(1).

dant's lawsuit constituted a continuing request for information under the FOIA.[4] Pursuant to MCL 15.235(7),

> If a public body makes a final determination to deny in whole or in part a request to inspect or receive a copy of a public record or portion of that public record, the requesting person may do either of the following:
>
> (a) Appeal the denial to the head of the public body pursuant to section 10.
>
> (b) Commence an action in circuit court, pursuant to section 10.[5]

Defendant argues that the trial court's ruling is overly burdensome, as it requires defendant to continually review the status of case files requested under the FOIA. Defendant contends that only a resubmission of an FOIA request is sufficient to obtain the information following a change in circumstances. However, nothing in the plain language of the FOIA indicates that a party must continually resubmit his or her FOIA request to determine if a change of circumstances has occurred. In fact, the FOIA specifically directs a requesting party to only one of two options following a denial: appeal the denial to the head of the public body or commence an action in circuit court.

What constitutes a continuing request for information under the FOIA is a matter of statutory interpretation which we review de novo.[6] The primary goal in statutory construction is to ascertain and give effect to

---

[4] As the trial court did order the release of the requested records, the court's erroneous ruling that plaintiff's initial FOIA request was properly denied is moot and does not merit reversal.

[5] MCL 15.235(7). Section 10 is located at MCL 15.240.

[6] *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

the intent of the Legislature.[7] When a statute's language is clear and unambiguous, we must assume that the Legislature intended its plain meaning and enforce the statute as written.[8] It is only when the statutory language is ambiguous that this Court is permitted to look beyond the statute to determine the Legislature's intent.[9] Statutory language is considered ambiguous when reasonable minds can differ with respect to its meaning.[10]

Section 10 of the FOIA allows a party to either appeal a denial of an FOIA request to the head of the public body or to file suit in the circuit court to compel the disclosure of the requested records.[11] The plain language of the FOIA does not impose a duty on the requesting party to also resubmit a request. We must assume that the Legislature intentionally omitted such a requirement, and we are not entitled to read into the statute any provisions to this effect.[12]

In a similar case, this Court found that a party's right to seek judicial intervention following a denial of an FOIA request was not destroyed when the party also resubmitted the request to the public body. In *Scharret v Berkley*,[13] the plaintiff resubmitted her FOIA request to the defendant after the defendant failed to respond in

---

[7] *Weakland v Toledo Engineering Co*, 467 Mich 344, 347; 656 NW2d 175 (2003), mod 468 Mich 1216 (2003).

[8] *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999).

[9] *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000).

[10] *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999).

[11] MCL 15.240(1).

[12] See *AFSCME v Detroit*, 468 Mich 388, 400; 662 NW2d 695 (2003) (the courts must derive the Legislature's intent from the language of the statute and not from missing language).

[13] *Scharret v Berkley*, 249 Mich App 405; 642 NW2d 685 (2002).

the statutorily required period of time. When the defendant finally denied her initial request in writing, the plaintiff filed suit.[14] This Court reversed the trial court's grant of summary disposition in favor of the defendant.

> MCL 15.235(7) provides that if a public body makes a final determination to deny a request, the requesting person may either appeal the denial to the head of the public body or commence an action in the circuit court within 180 days. Nothing in the FOIA states that the resubmission of a request denied by virtue of the public body's failure to respond divests the requesting person of the ability to exercise the options granted under MCL 15.240(1)(a) or (b).[15]

The statute does not state that a party resubmitting an FOIA request loses the right to file suit. Similarly, the statute does not indicate that a party is required to resubmit an FOIA request to ensure that it receives the requested information if the public body determines that the information has become nonexempt during the course of litigation.

Although defendant contends that the circuit court's order places a heavy burden on its shoulders—to monitor the status of all files upon which FOIA requests have been made—defendant's assertion ignores the fact that "the FOIA is a prodisclosure statute."[16] Defendant had denied plaintiff's request and plaintiff had filed suit in this matter. Accordingly, defendant would already have been monitoring this file more closely and could easily have released the information as soon as it became nonexempt. As such, we find that the trial court

---

[14] *Id.* at 407-408.

[15] *Id.* at 412-413.

[16] *Herald Co v Bay City*, 463 Mich 111, 119; 614 NW2d 873 (2000).

properly considered plaintiff's lawsuit a continuing request for information under the FOIA and ordered its release.[17]

### III. PROPRIETY OF AWARD OF COSTS, ATTORNEY FEES AND PUNITIVE DAMAGES

Defendant further argues that the trial court improperly awarded plaintiff costs and attorney fees and punitive damages. Pursuant to MCL 15.240(6), a trial court must award reasonable costs and attorney fees to a plaintiff who successfully seeks the release of records in the circuit court.[18] Plaintiff was clearly entitled to costs and fees in this case. Plaintiff filed suit as a result of defendant's denial of his FOIA request. Plaintiff was forced to file this action to acquire the release of the requested information. The fact that defendant disclosed these records in a deposition before trial could occur does not negate the time and effort plaintiff was required to expend.[19] Had defendant notified plaintiff that the case file had been closed rather than filing a false answer in this case, such an award might not be justified. However, defendant's tactics caused the continuation of the litigation in which plaintiff prevailed, and the court's award of costs and attorney fees was proper.

---

[17] Defendant also asserts that the trial court improperly found that defendant had a duty to release the requested information, as the requesting party was the head of the deputies' union. Defendant correctly asserts that a party's identity may not be considered when responding to an FOIA request. *State Employees Ass'n v Dep't of Mgt & Budget*, 428 Mich 104, 121; 404 NW2d 606 (1987) (opinion by CAVANAGH, J.). However the trial court's order was not based on this ground. Therefore, it does not merit further review.

[18] MCL 15.240(6).

[19] *Thomas v New Baltimore*, 254 Mich App 196, 202; 657 NW2d 530 (2002) (an award under MCL 15.240(6) was proper even though the public body disclosed the requested records while litigation was pending).

The trial court's award of punitive damages in the amount of $500 was also proper.

> If the circuit court determines in an action commenced under this section that the public body has *arbitrarily and capriciously* violated this act by *refusal or delay* in disclosing or providing copies of a public record, the court shall award, in addition to any actual or compensatory damages, punitive damages in the amount of $500.00 to the person seeking the right to inspect or receive a copy of a public record. . . .[20]

Defendant continued to conceal the requested records after the case file was closed and disclosure could no longer interfere with an ongoing investigation. Most importantly, defendant falsely indicated in its answer that the records were exempt from disclosure under MCL 15.243(1)(b)(i). Accordingly, the trial court properly determined that defendant had arbitrarily and capriciously violated the FOIA by delaying the disclosure of records and awarded punitive damages.

### IV. REDACTING INFORMATION BASED ON ATTORNEY-CLIENT PRIVILEGE

Defendant also contends that it was entitled to redact the memo from Undersheriff Myers to Lt. Howery and the redacted language referenced Undersheriff Myers's discussion with defendant's corporate counsel before closing the file. Whether the attorney-client privilege applies to a communication is a question of law that we review de novo.[21] The scope of the privilege is narrow; it applies " 'only to confidential communications by the client to his attorney, which are made for the purpose of

---

[20] MCL 15.240(7) (emphasis added).

[21] *Leibel v Gen Motors Corp*, 250 Mich App 229, 236; 646 NW2d 179 (2002).

obtaining legal advice.' "[22] When the client is an organization, the privilege attaches to communications between the attorney and any employee or agent " 'authorized to speak on its behalf in relation to the subject matter of the communication.' "[23] It is clear that no attorney-client privilege applies to the redacted memo. Although the memo references a conversation between Undersheriff Myers and defendant's corporate counsel, the memo was sent from one non-attorney to another to give instruction on a case file. As the memo is not within the scope of the attorney-client privilege, the trial court properly ordered its release in full.

Affirmed.

---

[22] *In re Costs & Attorney Fees*, 250 Mich App 89, 99; 645 NW2d 697 (2002), quoting *McCartney v Attorney General*, 231 Mich App 722, 731; 587 NW2d 824 (1998).

[23] *Leibel, supra* at 236, quoting *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 618; 576 NW2d 709 (1998).